AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT

7/11/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CGM___ DEPUTY

UNITED STATES OF AMERICA

v.

DYLAN MICHAEL JOEL ELEONORE,

Defendant.

Case No.   2:25-MJ-04304-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Jolene Las, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of June 22, 2025, in the County of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(5) | Alien in Possession of Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Jolene Las, Special Agent - ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 7/11/25

*Judge's signature*

City and state: Los Angeles, California

Hon. A. Joel Richlin, U.S. Magistrate Judge
*Printed name and title*

AUSA: John D. Ellis (x2468)

**AFFIDAVIT**

I, Jolene Las, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of criminal complaints against and arrest warrants for SHAQUILE KADEEM NICHOLAS FORDE MORGAN, also known as "Shagquile Forde" ("FORDE MORGAN"), and DYLAN MICHAEL JOEL ELEONORE ("ELEONORE") (collectively, "defendants") for violations of 18 U.S.C. § 922(g)(5), Alien in Possession of Firearm and Ammunition.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, evidence, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaints and arrest warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF SPECIAL AGENT JOLENE LAS

3. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since January 2024. I am currently assigned to the Glendale I Field Office of the Los Angeles Field Division of ATF, which conducts investigations involving violations of federal firearms, explosives, and narcotics laws. My experience

as an ATF SA includes, but is not limited to, conducting physical surveillance, executing multiple search and arrest warrants, and participating in controlled narcotic/firearm purchase operations involving the use of confidential informants and undercover agents. Additionally, I have participated in various aspects of firearms, narcotics, and gang investigations, including conducting surveillance, using confidential informants and undercover agents to make controlled purchases of narcotics and/or firearms, and executing search warrants.

4. As part of my training, I attended the Federal Law Enforcement Training Center located in Glynco, Georgia, for approximately six months, where I completed the Criminal Investigator Training Program and ATF Special Agent Basic Training course. During that time, I received training in firearm and ammunition identification, the means and methods of firearms trafficking, the examination of electronic devices in furtherance of the illegal possession, sale, and transfer of firearms and narcotics.

5. Prior to my employment with ATF, I was employed by the by the Department Veterans Affairs as a police officer for approximately eight months. I received a Bachelor of Science in both Criminal Justice and Political Science from the University of Wisconsin-Platteville in 2023. During my collegiate time, I interned with the Department of Homeland Security ("DHS") in Washington, D.C.

### III. SUMMARY OF PROBABLE CAUSE

6. On June 22, 2025, Los Angeles Police Department ("LAPD") officers conducted a traffic stop on a black Rolls Royce that failed to stop at a stop sign. FORDE MORGAN was driving the Rolls Royce, and ELEONORE was sitting in the front passenger's seat. While conducting the traffic stop, LAPD officers saw an open brown bottle of alcohol under the rear driver's seat of the Rolls Royce, which the officers could see from the outside of the car looking in. They conducted a vehicle search of the Rolls Royce due to the open container of alcohol and saw a black semi-automatic handgun under the front passenger seat of the vehicle. The LAPD officers also saw a second black semi-automatic handgun under the front driver's seat of the Rolls Royce. The officers arrested FORDE MORGAN and ELEONORE for firearms offenses. Immigration authorities were alerted of the arrests and discovered that FORDE MORGAN and ELEONORE were both aliens unlawfully present in the United States when they possessed the firearms.

### IV. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, videos, photos, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

   a. On June 22, 2025, at approximately 10:25 p.m., LAPD Officers Duarte and Palacios were conducting uniformed patrol in a marked black and white police vehicle in the Hollywood neighborhood of Los Angeles, California. Officers Duarte and Palacios observed a black Rolls Royce Cullinan ("the

3

Rolls Royce") traveling eastbound on Selma Ave. The Rolls Royce crossed Schrader Boulevard without stopping at the posted stop sign, in violation of California Vehicle Code ("VC") Section 22450. Officers Duarte and Palacios conducted a traffic stop on the Rolls Royce by activating their forward-facing red lights and siren. The Rolls Royce came to a complete stop at the southeast corner of Selma Ave and Wilcox Ave in the driveway of a private parking lot.

   b. Officers Duarte and Palacios approached the Rolls Royce and saw the FORDE MORGAN sitting in the driver's seat of the Rolls Royce. ELEONORE was sitting in the front passenger seat of the Rolls Royce. From the outside of the car, Officers Duarte and Palacios saw a brown bottle of alcohol labeled "Don Julio" under the rear driver's seat of the Rolls Royce. The bottle appeared to be opened, which caused the officers to believe defendants violated VC Section 23223(a). Officers Duarte and Palacios requested additional LAPD units to respond to the incident.

   c. Once additional units arrived, LAPD officers instructed FORDE MORGAN to exit the Rolls Royce. FORDE MORGAN then attempted to reach under the driver's seat of the vehicle. The officers ordered FORDE MORGAN to stop.

   d. ELEONORE reached under the rear of the driver's seat and recovered the bottle of "Don Julio". The officers ordered ELEONORE to stop.

   e. FORDE MORGAN was ordered out of the Rolls Royce, handcuffed, and placed in the back seat of an LAPD vehicle.

f.   ELEONORE was ordered out of the Rolls Royce, handcuffed, and placed in the back seat of a different LAPD vehicle.

g.   LAPD officers told ELEONORE they were going to conduct an open container of alcohol investigation due to the bottle they saw in the Rolls Royce.  LAPD officers then searched the interior of the Rolls Royce.  While searching the Rolls Royce, LAPD officers saw the butt of a black semi-automatic pistol ("the first firearm") under the front passenger seat of the Rolls Royce.  The first firearm was within the reach of ELEONORE when he was in the front passenger's seat of the Rolls Royce and contained a magazine loaded with ammunition.  LAPD officers photographed the first firearm, verified it was in working order, and rendered the first firearm safe.

h.   LAPD officers ejected the magazine in the first firearm, which contained live ammuntion.  LAPD officers also discovered the first firearm did not have a round in the chamber.

i.   The first firearm was later identified as a black Glock 23 Gen4 .40-caliber pistol with serial number SDU775.  The magazine was later found to contain ten live rounds of .40 S&W caliber ammunition.  Record checks revealed the first firearm was not registered to ELEONORE or FORDE MORGAN.  ELEONORE was arrested for violation of California Penal Code ("CPC") Section 25850(a) – Carrying a Loaded Firearm on or in a Person, Vehicle, or Public Place.

        j.    LAPD officers also saw in plain view the butt of a second black semi-automatic pistol ("the second firearm") under the driver's seat of the Rolls Royce. The second firearm was within the reach of FORDE MORGAN when he was seated in the driver's seat of the Rolls Royce. The second firearm contained a magazine loaded with ammunition. LAPD officers photographed the second firearm, verified it was in working order, and rendered the second firearm safe.

        k.    LAPD officers ejected the second firearm's magazine, which contained live ammuntion. They also discovered the second firearm did not have a round in its chamber. The second firearm was later identified as a black Glock 27 .40-caliber handgun with serial number LKL048. The magazine was later found to contain eight rounds of .40 S&W caliber ammunition. Record checks revealed the second firearm was reported stolen and was not registered to FORDE MORGAN or ELEONORE. FORDE MORGAN was arrested for a violation of CPC Section 25850(c)(2) – Carrying a Stolen Loaded Firearm.

## V. Defendants are Citizens and Nationals of the United Kingdom who are Unlawfully Present in the United States

    8.    Based on information relayed to Homeland Security Investigations ("HSI") SA Juan Orrantia by other law enforcement agents, on or about June 23, 2025, the ICE Pacific Enforcement Response Center ("PERC") received electronic notifications based on defendants' biometric fingerprint information that FORDE MORGAN and ELEONORE were in the custody of the LAPD. Defendants are not currently in LAPD custody.

9. Based on HSI SA Juan Orrantia's training and experience, when an alien applies for a United States visa or enters the United States, the alien is photographed and fingerprinted by DHS. The fingerprints are analyzed and assigned a unique fingerprint identifier. That fingerprint identifier is then associated with the individual's DHS file. Law enforcement typically obtains arrestees' fingerprints and engages in the same process and submits this information to be checked against various government databases. This way, if any future interactions with law enforcement result in fingerprints, law enforcement can compare the resulting fingerprint across many different documents to determine if it is the same person.

10. Based on SA Orrantia's training and experience, when the PERC receives an electronic notification based on biometric fingerprint information from a law enforcement agency, it typically means that fingerprints taken by an arresting agency generated a unique fingerprint identifier and compared with various government documents, including immigration documents, to identify the individual. In short, this is the way fingerprints taken as the result of an arrest can be matched with fingerprints in a database that houses fingerprint data from individuals presenting themselves for inspection at United States Ports of Entry.

11. On or about June 25, 2025, SA Orrantia reviewed printouts of DHS computer indices relating to defendants. Records checks revealed that defendants are citizens and nationals of the United Kingdom. Based on SA Orrantia's

training and experience, the DHS computer indices track and document each time an alien enters or exits the United States or is deported, excluded or placed into removal proceedings from the United States by DHS, was deported, excluded or placed into removal proceedings by the former INS, or is granted permission to enter or re-enter the United States.

12.  The DHS computer indices indicated that FORDE MORGAN entered the United States from the United Kingdom on June 14, 2023, and was admitted through the visa waiver program until September 11, 2023.  FORDE MORGAN failed to timely depart the United States or obtain a new visa to stay in the United States past September 11, 2023.  As such, FORDE MORGAN was an alien unlawfully present in the United States when he was arrested on June 22, 2025.

13.  The DHS computer indices indicated that ELEONORE entered the United States from the United Kingdom on February 1, 2025, and was admitted through the visa waiver program until May 1, 2025.  ELEONORE failed to timely depart the United States by May 1, 2025.  As such, ELEONORE was an alien unlawfully present in the United States when he was arrested on June 22, 2025.

### VI. Firearm Interstate Nexus

14.  On or about July 9, 2025, ATF SA Tiffany Lamphere, an ATF Firearms and Ammunition Interstate Nexus Expert, examined photographs of the firearms and ammunition recovered in connection with defendants' arrests and determined:

    a. The first firearm was manufactured by Glock in Austria.  In order for the first firearm to be recovered in California, it had to have moved in foreign commerce.

    b. Of the ten rounds of .40 S&W caliber ammunition recovered from the first firearm:

      i. Three rounds with the headstamp "WIN" were manufactured by Winchester in Illinois or Mississippi.  In order for this ammunition to be recovered in California, it had to have moved in interstate commerce;

      ii. Two rounds with the headstamp "BLAZER" were manufactured by CCI/Speer in Idaho or Federal Cartridge Company in Minnesota.  In order for this ammunition to be recovered in California, it had to have moved in interstate commerce;

      iii. One round with the headstamp "LAX" was manufactured by Freedom Munitions in Idaho.  In order for this ammunition to be recovered in California, it had to have moved in interstate commerce;

      iv. One round with the headstamp "WINCHESTER" was manufactured by Winchester in Illinois or Mississippi.  In order for this ammunition to be recovered in California, it had to have moved in interstate commerce;

      v. One round with the headstamp "·X-TREME·" was manufactured by Freedom Munitions in Idaho.  In order for this ammunition to be recovered in California, it had to have moved in interstate commerce;

      vi. One round with the headstamp "PMC" was manufactured by Poongsan Metals Corp. in Nevada, Mexico, or

South Korea.  In order for this ammunition to be recovered in California, it had to have moved in interstate or foreign commerce; and

        vii. One round with the headstamp "FEDERAL" was manufactured by CCI/Speer in Idaho or Federal Cartridge Company in Minnesota.  In order for this ammunition to be recovered in California, it had to have moved in interstate commerce.

    c.   The second firearm was manufactured by Glock in Austria.  In order for this firearm to be recovered in California, it had to have moved in foreign commerce.

    d.   Of the eight rounds of .40 S&W caliber ammunition recovered from the second firearm:

        i.   Seven rounds with the headstamp "·X-TREME·" were manufactured by Freedom Munitions in Idaho.  In order for this ammunition to be recovered in California, it had to have moved in interstate commerce; and

        ii. One round with the headstamp "WINCHESTER" was manufactured by Winchester in Illinois or Mississippi.  In order for this ammunition to be recovered in California, it had to have moved in interstate commerce.

//
//
//

## VII. CONCLUSION

15. For all of the reasons described above, there is probable cause to believe that FORDE MORGAN and ELEONORE have each committed a violation of 18 U.S.C. § 922(g)(5), Alien in Possession of Firearm and Ammunition.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 11th day of July 2025.

*/s/ Joel Richlin*

HONORABLE A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE